UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JESSICA MARCELA FOURNIER,

    Plaintiff,

v.                                      Case No: 6:15-cv-1931-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits under the Act. Upon a review of the record, and after due consideration, the Commissioner's final decision is **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## Background[2]

Plaintiff filed for benefits on May 30, 2012, alleging an onset date of July 15, 2009 (Tr. 172-73). Plaintiff claimed that she was disabled due to fibromyalgia (Tr. 206), depression, and pain (Tr. 13). Her date last insured was December 31, 2014 (Tr. 65).

Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested and received a hearing before an administrative law judge ("ALJ") (Tr.104-09;

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge and the matter has been referred in accordance with 28 U.S.C. §636(c) and Fed .R. Civ. P. 73.

[2] The information in this section is taken from the parties' joint memorandum (Doc. 17).

113-118; 1-34). In a decision dated April 3, 2014, the ALJ found Plaintiff not disabled through the date of her decision (Tr. 62-83). The Appeals Council denied Plaintiff's request for review on September 15, 2015 (Tr. 35-41). Accordingly, the ALJ's April 2014 decision is the final decision of the Commissioner.

Having exhausted the available administrative remedies, Plaintiff filed this action for judicial review (Doc. 1). The matter is fully briefed and ripe for resolution.

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The plaintiff bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her July 15, 2009 alleged onset date (Tr. 67). At step two, the ALJ determined that Plaintiff had the severe impairment of fibromyalgia (20 CFR 404.1520(c)) (Tr. 67), but found her medically determinable mental impairment of depression/mood disorder to be non-severe (Tr. 68). At step three, the ALJ found that Plaintiff did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) (Tr. 69). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), with the following limitations. The claimant can lift/carry 20 pounds occasionally, and 10 pounds frequently. She can stand/walk six hours out of an eight-hour workday, and sit six hours out of an eight-hour workday. She is limited to occasionally climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. She never should climb ladders, ropes or scaffolds.

(Tr. 69).

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a patient insurance clerk, interpreter, specimen processor, accident insurance clerk, and phlebotomist (Tr. 76), and made alternative findings at step five, that there are other jobs existing in the national economy that Plaintiff was able to perform (Tr. 77). Accordingly, the ALJ concluded that Plaintiff had not been under a disability from July 15, 2009, through the date of the ALJ's decision (Tr. 78).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff raises three issues on review, contending that the ALJ erred: (1) in not finding her mental impairments severe at step two; (2) by accepting the opinions of a non-examining psychologist over the opinions from a treating board certified psychiatrist; and (3) in assessing Plaintiff's subjective complaints of pain. Upon close review, no error is shown.

1. Step Two finding

In her decision, the ALJ acknowledged that Plaintiff had a medically determinable mental impairment of depression/mood disorder but concluded that it "does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (Tr. 68).

The ALJ has a duty to consider all impairments, both singly and in combination, when making an analysis of disability. 20 C.F.R. § § 404.1523 and 416.923. Remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to

consider properly. Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1219 (11th Cir. 2001). But, a mere diagnosis is not sufficient to establish that an impairment is severe. See Sellers v. Barnhart, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002). "The severity of a medically ascertained impairment must be measured in terms of its effect upon [a claimant's] ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." Id., citing McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1521.[3] An impairment or combination of impairments is "not severe" when medical or other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921.

The claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on the claimant's ability to perform basic work activities. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). Thus, a "[c]laimant need show only that his impairment is not so slight and its effect not so minimal." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir.1986). To satisfy the requirements of step two of the sequential

---

[3] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. 20 C.F.R. § 404.1521(b).

- 5 -

evaluation process, the claimant's impairment(s) also must be severe for at least twelve consecutive months. See 20 C.F.R. §§ 416.905(a), 416.909, 416.920(a)(4)(ii); Barnhart v. Walton, 535 U.S. 212, 217 (2002).

In this case, the ALJ considered Plaintiff's alleged mental impairment in the context of the four broad functional areas set out in the disability regulations for evaluating mental disorders (Tr. 68-69). Citing to record evidence, the ALJ found Plaintiff had no limitations in daily activities given her reported ability to perform most personal grooming activities, cook, wash laundry, take care of her young child, drive, make her bed, watch television, shop, go out alone, count change, pay bills, use the computer and telephone, attend her son's school activities, go to the movies, and visit with family members (Tr. 68). The ALJ found mild limitations in social functioning, citing Plaintiff's daily activities, reports that she gets along well with authority figures, and therapist Giselle Apostel's September 2013 assignment of a 65 GAF score, indicating only mild symptoms or some difficulties in Plaintiff's social and occupational functioning (Tr. 68, 644). The ALJ found Plaintiff had no more than mild limitations in concentration, persistence, or pace, given her activities and her reported ability to pay attention for a long time, follow instructions, and finish what she starts (although noting that Plaintiff sometimes has difficulty concentrating and sometimes needs to hear instructions more than once) (Tr. 68). Finally, the ALJ noted that Plaintiff experienced no episodes of decompensation of extended duration (Tr. 68). Although the ALJ did not list Plaintiff's depression as severe at step two of the sequential evaluation, the record reflects that the ALJ considered it, and the ALJ's conclusions reached with respect to the impact of Plaintiff's depression on each functional area are supported by the ample evidence cited.

Importantly, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); see also Heatly v. Comm'r of Soc. Sec., 382 Fed. Appx. 823 (11th Cir. 2010). Consistent with the regulations and applicable law, the ALJ credited Plaintiff with another severe impairment at step two and proceeded forward with the sequential evaluation. So, even if Plaintiff's depression should have been included as severe at step two (a finding the Court need not make), the omission is only reversible error if the ALJ subsequently failed to fully account for functional limitations arising from Plaintiff's depression. As Plaintiff has not identified any such functional limitations lasting for the 12 month requirement, remand is not warranted.

2. Evaluation of Medical Opinion Evidence

Plaintiff objects to the ALJ's evaluation of the opinions of her treating psychiatrist, Dr. Jennifer Scott. In the administrative decision, the ALJ summarized Dr. Scott's treatment notes (Tr. 73-75), and then discounted the doctor's opinions, reasoning:

> As to mental health issues, the undersigned notes that in February 2013 the claimant began treatment with Dr. Scott, who diagnosed depressive disorder, anxiety disorder, and ADHD. Despite what seemed to be a fairly normal mental status examination, Dr. Scott assessed the claimant with a GAF of 45. By April 2013, the claimant reported she was better and she was working a full time job filing insurance claims for hospitals. In July 2013, the claimant reported to Dr. Scott that she was functioning well on Adderall, even while in pain. Although she had lost her job, she was looking for another job in the insurance industry. (Exhibit No. 13F.) Several months later, in September 2013, therapist Ms. Apostel reported the claimant was helping at her son's school, and had a GAF of 65. (Exhibit No. 21F.)

> No weight is assigned to the September 2013 medical source statement provided by Dr. Scott. The opinions expressed in that statement, indicating the claimant had been markedly limited in her mental functioning since 2009 although Dr. Scott had treated the claimant only since February 2013, are inconsistent not only with the objective medical evidence of the claimant's longitudinal treatment, but also with Dr. Scott's own treatment notes addressing the claimant's functionality and progress. (Exhibit No. 13F.)

(Tr. 76).

Plaintiff objects to these findings, contending that Dr. Scott's opinions are "based on extensive abnormalities documented throughout the treatment record" and "are uncontradicted by other substantial evidence in the record." As such, argues Plaintiff, the ALJ erred in discounting these opinions because as a treating physician, the ALJ was required to either give these opinions controlling weight or explicitly address factors such as the length of treatment, frequency of examination, nature and extent of the treatment relationship, and specialization of the treating source. 20 C.F.R. §§404.1527, 416.927.

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178–79 (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with

- 8 -

the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician *unless there is good cause to do otherwise*. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440.

By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c)(2); Crawford v. Comm'r, of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004). Nonetheless, all opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

The ALJ concluded that Dr. Scott's opinions of marked limitations in functioning were inconsistent with the doctor's own treatment records and the evidence as a whole. That finding is supported by substantial evidence. As detailed by the ALJ in her decision (Tr. 71-75), the treatment records show periods where Plaintiff did not complain of any psychiatric symptoms, her mental status examinations do not reflect disabling abnormalities, and she responded well to treatment.[4] The Court also finds substantial

---

[4] For example, as set forth in the joint memorandum, treatment notes by treating physician Violet Slanac starting in July 2010 showed normal mental status examinations and Plaintiff denied any current psychiatric symptoms. By October 2010, Dr. Slanac opined Plaintiff's arthralgias/myalgias were psychosomatic manifestations of anxiety and depression and were much improved since taking Lexapro (Tr. 71, 291). In April 2011, Plaintiff returned to Dr. Slanac and reported that she stopped taking

evidence to support the ALJ's conclusion that the limitations set forth by Dr. Scott were not corroborated by her own treatment notes.[5] Also, the Court finds evidentiary support for the ALJ's conclusion that Plaintiff's activities, including two international trips, "contradict any notion of total disability" (Tr. 75).[6]

The ALJ gave great, but not controlling, weight to the opinions of state agency consultants, including psychologist Robert Stainback, Ph.D. (Tr. 76, 98-100). Although Plaintiff states that the ALJ "relied primarily" on this report (Doc. 17 at 25), the Court sees no basis for this conclusion. Rather, the ALJ detailed and credited the medical evidence, including numerous unremarkable assessments, and discounted the medical source statement provided by Dr. Scott. Although the consultant did not review all the medical evidence, the ALJ noted that the opinion of the consultant was based on all the "*available* medical evidence," (Tr. 76, emphasis added), and the opinion was consistent with the

---

benzodiazepine and antidepressant medications because her anxiety/depression was self-controlled (Tr. 289). Dr. Slanac opined Plaintiff's depression had stemmed from marital issues that were now quiescent (Tr. 289).
   In July 2011, Plaintiff reported to treating physician Dr. Hasan that she was feeling much better on Zoloft following a recent episode of depression due to her father's death, and she denied any psychiatric symptoms (Tr. 339-40). In July 2012, rheumatologist Dr. Ramirez opined that Plaintiff's anxiety was doing well on Xanax (Tr. 453). In September 2012, Plaintiff reported to Dr. Hasan that she had been doing better until her recent divorce; however, Plaintiff denied any current psychiatric symptoms (Tr. 430-31). In January 2013, Plaintiff's depression improved on a combination of Wellbutrin and Cymbalta, and she denied current psychiatric symptoms (Tr. 545). By September 2013, Plaintiff reported to her therapist that she had signed up to help at her son's preschool (Tr. 644-645).

   [5] As detailed by the ALJ (Tr.73-74), on February 19, 2013 initial visit with Dr. Scott, Plaintiff was well oriented, her memory seemed unimpaired, and her thought content showed no significant preoccupations. Plaintiff appeared cooperative and interested, and she was able to maintain focus (Tr. 468-69). In April 2013, Plaintiff reported to Dr. Scott that she was better able to focus and had a full-time job filing insurance claims for hospitals (Tr. 470). Dr. Scott's mental status exam findings were largely normal aside from a finding of depressed mood and constricted affect (Tr. 470). In July 2013, Dr. Scott reported the claimant had lost her job but was looking for another job in the insurance industry. She had not noticed a benefit from an increased dose of Cymbalta, but she had a stable mood and was "doing well" on the Adderall (Tr. 475).October notes again show normal mental status exam, other than a depressed mood and constricted affect (Tr. 630).

   [6] The ALJ is entitled to consider this evidence."[A]n ALJ does not need to give a treating physician's opinion considerable weight if evidence of the claimant's daily activities contradicts the opinion." Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 873 (11th Cir. 2011).

- 10 -

ALJ's findings with respect to the other evidence. No error is shown. See generally Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 874 (11th Cir. 2011) (no error in relying on non-examining consultants' opinions where the opinions were consistent with treatment records and ALJ properly discounted the treating physician's opinion).

### 3. Credibility

A claimant may seek to establish that she has a disability through her own testimony regarding pain or other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Id. Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Foote, 67 F.3d at 1562.

The ALJ found Plaintiff "generally credible regarding the nature of her impairments. However, the objective medical evidence and claimant's activities do not substantiate either the level of pain, or the limitations the claimant describes in this disability claim" (Tr. 75). Plaintiff contends that this determination lacks the support of substantial evidence in that her activities are not reflective of what she can do on a regular basis. Plaintiff also argues that the ALJ failed to explain what "objective" evidence the ALJ found inconsistent

with Plaintiff's statements regarding her physical impairments. These contentions are without merit.

The ALJ properly considered Plaintiff's statements that she engaged in multiple activities, along with the rest of the evidence, to find that Plaintiff was not as limited as she had alleged. See 20 C.F.R. § 404.1529(c)(3)(i); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987). And, in her detailed summary of the medical evidence (Tr. 71-75), the ALJ set forth numerous objective findings that are inconsistent with disabling limitations. "The question is not ... whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." Werner v. Comm'r, of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011). Here, the ALJ provided a detailed analysis of the evidence of record, supplied a rationale for her findings, and these conclusions are supported by the evidence she cites. "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. (internal quotation and citation omitted).

## Conclusion

Upon consideration of the foregoing:

1. The Commissioner's final decision in this case is **AFFIRMED**

2. The Clerk is directed to enter judgment accordingly and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on January 9, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record